UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL W. GILLAM, JR.,

    Plaintiff,

        v.                         CAUSE NO. 3:22-CV-220-RLM-MGG

RON NEAL, et al.,

    Defendants.

OPINION AND ORDER

Michael W. Gillam, Jr. a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. The court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Because Mr. Gillam has no attorney, the court must give his read his allegations liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Mr. Gillam is incarcerated at Indiana State Prison. He alleges that in January 2020, "the administration of Indiana State Prison went thru E dorm placing X's on known violent offenders cubes, showing the mix of sex offenders and violent offenders

in the dorm." He doesn't elaborate on what he means, and it is unclear if he or someone near him had their cube marked with an X.[1] He claims that one year later, in January 2021, he was "attacked in E dorm." He doesn't identify who attacked him or describe any of the circumstances surrounding the attack, other than to say that a staff member found him 20 hours after the attack with a fractured skull and other injuries, requiring him to be taken to an outside hospital for treatment.

He further alleges that in March 2021, he "earned a place in the Honor cell house." He doesn't elaborate, but it seems that this gave him more privileges than inmates in general population have. He claims that in this cell house he was "housed with 3 different violent offenders," and that one of these inmates sexually assaulted him. He doesn't identify the inmate, provide the date of the attack, or describe any of the events leading up to or surrounding the attack. He believes he shouldn't have been housed with this inmate because he was in a "significantly comprised mental state" because of his prior head injury and because he had recently been diagnosed with multiple sclerosis.

He says that he reported the attack to someone he does not identify and was "stripped of all honor privileges and moved back to general population." He further claims that some unidentified person told him that "without video proof [the attack] never happened." He doesn't say whether this was the same person who forced him

---

[1] Mr. Gillam is serving an 80-year sentence imposed in 2011 for child molestation and child exploitation offenses. *See* Gillam v. State, 163 N.E.3d 292 (Ind. Ct. App. 2020). The court is permitted to take judicial notice of public records at the pleading stage. *See* FED. R. EVID. 201; Tobey v. Chibucos, 890 F.3d 634, 647 (7th Cir. 2018).

to move out of the Honor cell house or someone else. Based on these events, he sues the prison itself and Warden Ron Neal,[2] seeking "cash."

Mr. Gillam appears to be trying to allege a claim for the failure to protect him from the two attacks. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832-833 (1994). Because "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more" Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008), a failure-to-protect claim can't be based "merely on knowledge of general risks of violence in a detention facility." Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Santiago v. Wells, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard.

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger. [Plaintiff] testified during his deposition that he told officers twice . . . that he was afraid for his life and he wanted to be transferred off the tier. . . . This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

---

[2] Mr. Gillam doesn't list the Warden in the box where he is asked to provide the defendants' name, title, and work address, but he lists Ron Neal in the caption. (*See* ECF 15 at 1.)

3

Klebanowski v. Sheahan, 540 F.3d 633, 639-640 (7th Cir. 2008) (internal citations and footnote omitted).

"[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. Hildreth v. Butler, 960 F.3d 420, 425–426 (7th Cir. 2020). Nor does making a "mistake" or exercising "poor judgment" satisfy the deliberate indifference standard. Giles v. Tobeck, 895 F.3d 510, 514 (7th Cir. 2018). Instead, the plaintiff must describe acts or omissions that "cross the line from negligently enabling the attack to recklessly condoning it." *Id.*

Mr. Gillam's proposed amended complaint doesn't plausibly allege that any individual staff member had actual knowledge of a specific risk to his safety and consciously disregarded that risk. It's not clear that Mr. Gillam himself had any warning about either attack. Random acts of violence might demonstrate "the tragic realities of jail and prison life that detainees are often subject to," but they don't give rise to Eighth Amendment liability. Grieveson v. Anderson, 538 F.3d at 776–777. Nor can the mere fact that he was housed with inmates convicted of violent offenses form the basis for an Eighth Amendment claim. Brown v. Budz, 398 F.3d at 913.

He names the prison as a defendant, but as the court previously told him, this is a building, not a "person" that can be sued for constitutional violations under 42 U.S.C. § 1983. Smith v. Knox County Jail, 666 F.3d 1037, 1040 (7th Cir. 2012). He also names Warden Neal, but the Warden isn't mentioned in the narrative section and there is no indication that the warden had any personal involvement in these

4

events. The warden can't be held liable solely because he oversees operations at the prison. Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018); Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). The warden would be a proper defendant for an injunctive relief claim, Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011), but Mr. Gillam neither specifically asks for injunctive relief, nor clearly allege that he believes himself to be in danger at present.[3] He hasn't alleged a plausible Eighth Amendment claim against any defendant.

Mr. Gillam might also be trying to assert a claim related to his removal from the Honor cell house. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship... in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Termination from a prison job, the loss of privileges, or a transfer to a less desirable location don't trigger due process protections. Cochran v. Buss, 381 F.3d 637, 641 (7th Cir. 2004) (claims that inmate "lost his preferred prison living arrangement, his prison job and his eligibility for rehabilitative programs" were not significant enough to trigger due process concerns). Mr. Gillam's allegations don't state a plausible due process claim upon which relief can be granted.

---

[3] When asked to specify what relief he is seeking in the event he wins the case, he writes "cash" and also cites to Cole v. Indiana Dep't of Correction, 616 N.E.2d 44 (Ind. Ct. App. 1993). (ECF 15 at 4.) In that case, the Indiana Court of Appeals concluded that material issues of fact existed as to whether prison staff had breached its duty of care to an inmate left unattended in a witness room in the company of unhandcuffed prisoners, thus precluding summary judgment. 616 N.E.2d at 46.

Mr. Gillam's allegations might trigger First Amendment concerns, because an inmate can't be punished for engaging in certain kinds of speech. To assert a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citation omitted). Reporting a sexual assault might count as protected activity, but Mr. Gillam doesn't provide any details about who he reported the attack to, how he reported it (whether orally, through the grievance process, or some other means), or who made the decision to remove him from the Honor cell house. Nor can one tell from his allegations how close in time the removal from the Honor cell house occurred in relation to the attack. Without such details, he hasn't alleged a plausible First Amendment retaliation claim on which relief could be granted. Additionally, as with his Eighth Amendment claim, the only defendants he names are the prison and the Warden; the prison isn't a viable defendant, and there is no factual content from which the court can plausibly infer that the warden was the one who allegedly retaliated against Mr. Gillam.

Mr. Gillam hasn't stated a plausible constitutional claim against any defendant. In the interest of justice, the court will give him a final chance to file an amended complaint if, after reviewing the court's order, he believes that he can state a plausible constitutional claim based on these events, consistent with the allegation

he has already made under penalty of perjury. *See* <u>Abu-Shawish v. United States</u>, 898 F.3d 726, 738 (7th Cir. 2018); <u>Luevano v. Wal-Mart</u>, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **August 26, 2022**, to file an amended complaint as outlined in this opinion; and

(2) CAUTIONS him that if he doesn't respond by the August 26 deadline, this case is subject to dismissal under 28 U.S.C. § 1915A because the current complaint does not state a plausible constitutional claim upon which relief can be granted.

SO ORDERED on July 27, 2022

                                                s/ Robert L. Miller, Jr.
                                                JUDGE
                                                UNITED STATES DISTRICT COURT