UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL W. GILLAM, JR., <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL, et al., <br><br> Defendants. | CAUSE NO. 3:22-CV-220-RLM-MGG |

OPINION AND ORDER

Michael W. Gillam, Jr. a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. This is his fourth attempt to state his claims. (*See* ECF 1, 15, 17.) The court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Because Mr. Gillam is proceeding without counsel, the court must give his allegations liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Mr. Gillam is incarcerated at Indiana State Prison. He alleges that in January 2020, "the administration of Indiana State Prison went thru E dorm placing X's on

the cubes of offenders who had a history of attacking staff members. This action allowed the dorm population to see who was violent and who was not and prey on one another accordingly." (ECF 20 at 2.) All of the other events pertinent to this case took place in 2021. Mr. Gilliam claims that on January 9, 2021, Unit Team Manager Jackeline Mays allegedly said within earshot of other inmates that Mr. Gillam was "snitching on drugs, alcohol, and cell phones in the dorm." Later that day, he was "jumped from behind" by another inmate and severely beaten, suffering brain hemorrhaging and other serious injuries.

In March, Mr. Gilliam was moved from E dormitory to I cell house, which is an "Honor" dorm with "more privileges and open doors to help me exercise." He says Unit Team Manager Banes "kept placing me with inmates that had problems with my charges."[1] He does not describe any specific problems that arose as to his first two cellmates, but as to the third, an inmate known as "Iowa," he claims he and Iowa were a "poor pairing" due to this inmate's record of "assaulting inmates and staff," coupled with Mr. Gillam's "mentally comprised situation" resulting from the brain injury he suffered in the earlier attack, as well as a recent diagnosis of multiple sclerosis. On October 10, he awoke to find Iowa in his bed "pinching my nipple." Iowa allegedly told him he "would be happy to help me discover my homosexual side." Mr. Gillam claims he told Iowa to get back in his own bed, and as far as the complaint reveals, Iowa did so.

---

[1] Public records reflect Mr. Gillam is serving a sentence for child molestation offenses. *See* Gillam v. State, 163 N.E.3d 292 (Ind. Ct. App. 2020). The court is permitted to take judicial notice of public records at the pleading stage. *See* FED. R. EVID. 201; Tobey v. Chibucos, 890 F.3d 634, 647 (7th Cir. 2018).

2

Mr. Gillam reported this incident to Unit Team Manager Bessie Lenard and Unit Team Manager Unit Team Manager Banes two days later. They in turn sent him to the prison's intelligence and investigations department to be interviewed, where an unknown person told him that without evidence it would be difficult to prove the incident occurred. When he returned from his interview, he was told he was being moved to C cellhouse. Apparently unhappy with this outcome, he continued to complain about the incident with Iowa through grievances, emails, and other internal complaints, also speaking with the prison's Prison Rape Elimination Act ("PREA") auditor, Mable Wheeler. He thinks prison staff didn't do enough to investigate the incident and punish Iowa.

Mr. Gillam had begun working at the prison's electronics shop the previous August. He claims that in January, after the first time he was attacked, he was told not to report to work "until told otherwise." When he returned to work is unclear, but he claims that he was formally terminated on August 24 for unsatisfactory job performance. Based on these events, he sues Warden Ron Neal, PREA Coordinator R. Brennan, Executive Assistant Mark Newkirk, Unit Team Manager Banes, Unit Team Manager Mays, a "Major Warlow" (first name unknown), and Unit Team Manager Lenard. He seeks compensatory and punitive damages, and "unrealized wages and back pay" from his prison job.

Mr. Gillam alleges that prison staff didn't adequately protect him from the January attack and the October incident with Iowa. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of

3

inmates" and to "protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832-833 (1994). Because "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more," Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008), a failure-to-protect claim can't be based "merely on knowledge of general risks of violence in a detention facility." Brown v. Budz, 398 F.3d 904, 913 (7th Cir. 2005). Random acts of violence demonstrate "the tragic realities of jail and prison life that detainees are often subject to," but they don't give rise to Eighth Amendment liability. Grieveson v. Anderson, 538 F.3d at 776–777.

The plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Santiago v. Wells, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. "To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." Klebanowski v. Sheahan, 540 F.3d 633, 639-640 (7th Cir. 2008) (internal citations and footnote omitted). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. Hildreth v. Butler, 960 F.3d 420, 425–426 (7th Cir. 2020). Nor does making a

4

"mistake" or exercising "poor judgment" satisfy the deliberate indifference standard. Giles v. Tobeck, 895 F.3d 510, 514 (7th Cir. 2018).

As for the January attack, Mr. Gillam alleges that Unit Team Manager Mays called him a "snitch" within earshot of other inmates, which poses particular risks in the prison setting. Dale v. Poston, 548 F.3d 563, 570 (7th Cir. 2008) (observing that "it's common knowledge that snitches face unique risks in prison"). another inmate attacked and severely beat him later that day, and it can be plausibly inferred from his allegations that Unit Team Manager Mays's statement was the reason for the attack. It's not entirely clear from the complaint whether Unit Team Manager Mays knew other inmates heard her statement, but giving Mr. Gilliam the inferences to which is entitled at this stage, he has alleged enough to proceed further on a claim for damages against Unit Team Manager Mays.[2] *See* Wright v. Miller, 561 F. App'x 551, 555 (7th Cir. 2014) (prison staff may be found liable where it can be proven they knew an inmate "faced a significant risk of harm from a 'particular vulnerability' and exposed him to that risk anyway"); Knight v. Flakes, No. 3:22-CV-394-JD-MGG, 2022 WL 1618729, at *1 (N.D. Ind. May 23, 2022) (inmate stated Eighth Amendment claim against guard who allegedly told other inmates he was a snitch, after which he was attacked).

---

[2] As for the allegation about "the administration" putting X's on inmates' cubes, Mr. Gilliams doesn't elaborate on how this action impacted him personally, or how, if at all, it was linked to the January 2021 attack, which occurred a full year later. He also does not link this incident to any of the defendants named in the complaint. He may have simply included this as background, but the court concludes that he doesn't state claim in connection with this allegation, to the extent he was trying to do so.

5

As for the October 2021 incident, Mr. Gillam alleges that Unit Team Manager Banes made a "poor pairing" between he and Iowa. Her mistake or failure to use good judgment doesn't amount to an Eighth Amendment violation. Mr. Gillam doesn't allege that he alerted Unit Team Manager Banes to a specific risk of harm posed by this inmate, and that Iowa had a violent history cannot alone form the basis for an Eighth Amendment claim. Brown v. Budz, 398 F.3d at 913. Mr. Gilliam claims to have been "mentally comprised" at that time, but he doesn't elaborate on what this means or how this put him at special risk of being harmed by Iowa. When he reported the incident, Unit Team Managers Lenard and Banes took the matter seriously, sending him to be interviewed by prison investigators and then moving him to another cellhouse. His unhappiness with the decision to move him to another cellhouse, rather than move Iowa or take some other action, doesn't mean his Eighth Amendment rights were violated. Dale v. Poston, 548 F.3d at 570 ("Prison officials do not violate the Eight Amendment because the mode of protection they offer does not sit well with a prisoner. Rather, if they offer reasonable protection from the threat, they have done their duty."). To the extent he is alleging violations of PREA or prison policy in the handling of this incident, that can't form the basis for a claim under 42 U.S.C. § 1983. Winners v. Hyatt, No. 3:20-CV-1035-JD-MGG, 2021 WL 1165140, at *2 (N.D. Ind. Mar. 25, 2021) (PREA does not create a private right of action); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations").

6

Mr. Gillam also alleges that he was subjected to unlawful retaliation. Under the First Amendment, an inmate can't be punished for engaging in certain kinds of speech. To assert a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted).

Mr. Gillam claims that he lost his prison job due to his grievances and other complaints about the incident with Iowa, including this lawsuit. Filing a prison grievance or lawsuit is a protected activity for purposes of the First Amendment. *Id.* Even though an inmate does not have a constitutional right to a prison job, "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Id.* (citation omitted). Losing one's source of income is a deprivation that could "dissuade a reasonable person from engaging in future First Amendment activity." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015).

Nevertheless, Mr. Gillam hasn't satisfied the third prong. He says he was hired at his prison job in August 2020 and was told after the January 2021 attack that he was "not to report to work until told otherwise." This was long before the incident with Iowa, so that incident and his ensuing complaints couldn't possibly have been the reason behind that decision. Although he was eventually terminated in August

2022, he initiated this lawsuit in March 2022 and had been making internal complaints about the incident with Iowa for nearly a year. He hasn't alleged a plausible connection between his protected activity and his termination. Additionally, he doesn't allege that any of the defendants made the decision to terminate him, nor can it be plausibly inferred that any of them had authority over his job in the prison's electronics shop. He can't proceed on a First Amendment retaliation claim.

Mr. Gilliam names the Warden as a defendant, but this high-ranking official can't be held liable simply because he oversees operations at the prison or supervises other prison staff Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018); Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). The Warden is not mentioned anywhere in the narrative section of the complaint, and the court cannot plausibly infer that he had any personal involvement in these events. Likewise, Mr. Gillam doesn't describe what personal involvement, if any, Coordinator Brennan, Assistant Newkirk, and Major Warlow had in these events. He hasn't alleged a plausible constitutional claim against these defendants.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Unit Team Manager Jackeline Mays in her personal capacity for placing him at risk of being attacked on or about January 9, 2021, by calling him a snitch in front of other inmates in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Ron Neal, R. Brennan, Mark Newkirk, Pam Banes, Major Warlow, and Bessie Lenard as defendants;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Unit Team Manager Jackeline Mays at the Indiana Department of Correction and to send her a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(6) ORDERS Unit Team Manager Jackeline Mays to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 12, 2022

                                                s/ Robert L. Miller, Jr.  
                                                JUDGE  
                                                UNITED STATES DISTRICT COURT